**Herbert SIMPSON, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 14743.**

United States Court of Appeals Ninth Circuit.

Feb. 11, 1957.

Rehearing Denied April 13, 1957.

"1. Mr. Simpson would you please state your residence?

"2. Isn't it a fact that you live at 9115 North Geneva, Portland, Oregon?

"3. Would you give this committee, please, a brief résumé of your educational background?

"4. Now, Mr. Simpson, did you ever go to high school?

"5. Were you ever in the armed forces of the United States?"

The ground for refusal Simpson stated was the questions would tend to incriminate him. He relied on the Fifth Amendment of the Constitution of the United States which reads in relevant portion as follows:

"No person * * * shall be compelled in any criminal case to be a witness against himself * * *."

On November 30, 1954, a federal indictment was handed down by the grand jury at Portland. It contained a count for the refusal to answer each question. Contempt of Congress was charged. See 2 U.S.C.A. § 192. It asserted that the hearing was being conducted pursuant to 60 Stat. 828 by a sub-committee of the Committee on Un-American Activities of the House of Representatives.

Conviction by a jury on the five counts on the five questions set forth above followed on January 20, 1955. On January 31, 1955, a concurrent sentence of ten months imprisonment was imposed on each count. A fine of $250 was levied on the first count (Mr. Simpson would you please state your residence?) alone.

Reuben G. Lenske, Portland, Or., for appellant.

C. E. Luckey, U. S. Atty., Robert R. Carney and Thomas B. Brand, Asst. U. S. Attys., Portland, Or., for appellee.

Before FEE, CHAMBERS and HAMLEY, Circuit Judges.

CHAMBERS, Circuit Judge.

Before a Congressional sub-committee conducting a phase of an investigation at Portland, Oregon, Herbert Simpson on June 19, 1954, refused to answer the following questions:

■ All of the sentences on the last four counts, being within the limits of the first count and no part of the same four counts being cumulative, this court need proceed no further than the first count, if the judgment thereon is sustained. Goldbaum v. United States, 9 Cir., 204 F.2d 74. Winger v. United States, 9 Cir., 233 F.2d 440.

Appellant's sweep on appeal is broad with 25 specifications of error. The

opinion will be limited to the few having some vitality.

In the eleventh specification of error Simpson asserts the indictment was defective in that it fails to charge that the refusal was "willful or wrongful or unlawful." The indictment in the charging language merely says, " * * * the defendant refused to answer those pertinent questions:"

The statute reads as follows:

"Every person who having been summoned as a witness by the authority of either House of Congress to give testimony or to produce papers upon any matter under inquiry before either House, or any joint committee established by a joint or concurrent resolution of the two Houses of Congress, or any committee of either House of Congress, willfully makes default, or who, having appeared, refuses to answer any question pertinent to the question under inquiry, shall be deemed guilty of a misdemeanor, punishable by a fine of not more than $1,000 nor less than $100 and imprisonment in a common jail for not less than one month nor more than twelve months."

■ An indictment of course should concisely tell the story of what the defendant is charged with doing. While writing the charging language that precedes stating what this defendant has done, it is always at least good practice, and ordinarily required, that one follow the statute. "Willfully" here in Sec. 192 only modifies "makes default." It does not reach through to "refuses to answer." This is a misdemeanor statute. That is an important factor here. Of course, "refuse" necessarily imports "intentionally." "Refusal" is not consistent with words of declination made by one asleep or knocked unconscious or by one who did not understand the English language. While the indictment had no spare words, it was sufficient. The protection to which the defendant was entitled, an instruction that the refusal must be intentional, was given by the trial judge to the jury.

■ Appellant complains that it was improper for the court to decide the issue of pertinency of the questions to the Congressional Committee inquiry. That point was settled in Sinclair's case, Sinclair v. United States, 279 U.S. 263, 49 S.Ct. 268, 73 L.Ed. 692.

Some specifications go to the scope of the "privilege" under the Fifth Amendment. In the question, "Mr. Simpson, would you please state your residence" there seems to be nothing approaching the proscriptions laid down in Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118. This is on its face a question of identity. It separates this witness from all the other Herbert Simpsons in the United States and perhaps, even another Herbert Simpson in Portland.

■ Conceivable cases might be presented to illustrate how stating one's address would tend to incriminate. But certainly in the unusual case some burden is on the defendant or his counsel to suggest at some time, some place during his interrogation [1] (that is not to say absolutely prove) how facts ordinarily not incriminating might reasonably tend to be incriminating in their special setting.

As the Fifth Amendment becomes more and more of a recurring problem, there will be borderline cases on delineation, but this is not one of them.

■ Another specification charges that Simpson committed no crime in refusing to answer as to his place of abode because the Congressional Committee already knew where he lived. The point may have some naked validity, but will not stand inspection. It is the very essence of almost any inquiry to find out who a man is. The informal knowledge one has of where a witness

---

[1] If not at the interrogation, at least before his criminal case is submitted for decision.

lives and of his identity may be entirely erroneous. Identity established, an inquiry can proceed to the subject at hand, but the fact that finding out where Simpson lives is not the ultimate objective of the interrogation does not make where he lives impertinent, unessential or immaterial.[2]

The judgment is affirmed.

2. Recent cases, particularly with reference to pertinency and propriety of questions, which this court believes to be in line with the decision announced herein are Barenblatt v. United States, D.C. Cir., 240 F.2d 875, and Sacher v. United States, D.C.Cir., 240 F.2d 46.