**Bernard STEIN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 16043.

United States Court of Appeals Ninth Circuit.

Feb. 4, 1959.

Russell E. Parsons, Beverly Hills, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Leila F. Bulgrin, Robert John Jensen, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before FEE, CHAMBERS and BARNES, Circuit Judges.

CHAMBERS, Circuit Judge.

Stein has been convicted upon two narcotics counts and sentenced to 12 years imprisonment on each count, the sentences to run concurrently. The defendant waived a jury.

Both counts were under 21 U.S.C.A. § 174. The date of the alleged event was March 24, 1957, and the place of it on Ilona Street near Beverly Glen Boulevard. (A nearby thoroughfare better known than Ilona is Pico Boulevard.) The first count charged that Stein did "receive, conceal and transport, and facilitate the concealment and transportation" of about one ounce and 253 grains of heroin. The second count charged that he did "sell and facilitate the sale" of the same heroin.

One of the defendant's main points on appeal is that the evidence is insufficient to sustain the charge (the first count) of receiving, concealing and transporting or facilitating the accomplishment thereof. We disagree, but do not discuss the point in detail because it is now established in federal jurisprudence beyond cavil that if the conviction is good on either count, when identical concurrent sentences are imposed, then the appellate court is not to concern it-

self with the alleged weaknesses on one count, if the other count is good. And, here there is unquestionably adequate evidence to sustain the second count: the sale count.[1] See Chin Bick Wah v. United States, 9 Cir., 245 F.2d 274, certiorari denied 355 U.S. 870, 78 S.Ct. 120, 2 L.Ed.2d 76.

■ Defendant-appellant also assigns as error the admission in evidence of an oral statement allegedly made to narcotics officer Feldman. The statement was: "You see I help an S.O.B. and I get in trouble." The claim is that the statement was not free and voluntary. It is claimed that the statement was made under a virtual promise of immunity. The incident involving the remark was a conference between agent Feldman and Stein which was arranged to be held in the office of Stein's counsel.[2] Stein met Feldman at the designated office and then the two went elsewhere. We note several infirmities in the merits of this specification of error. First, the remark in context doesn't mean very much. It is not plausible that the able trial judge gave it much weight or that it tipped the scales in the slightest. It was just a case of whether the trial judge believed the prosecution version of what happened on March 24 or whether he believed the defense story of innocence. Second, no objection to the receipt of the testimony was made until it was in the record and had been well "batted around." Third, we do not find from an examination of the record that it was necessarily made under any promise of immunity. And it certainly was made under no compulsion. Fourth, if we should consider the point, it would be in a curious posture. Stein says the remark did not actually mean anything harmful to him in fact. And the record is positive that the defendant has never admitted, but has always denied, he had anything to do with heroin or any narcotic on the day in question.

■■ Stein for his third point here pleads entrapment. Here again we pass over the anomaly of the position of "I didn't do it, but if I did, I was entrapped." During the course of receipt of the evidence no claim of entrapment was made. However, it was made at the conclusion of the case. The evidence does not compel a conclusion of entrapment. And, by the judgment of the trial court, this claim of entrapment becomes an issue found against defendant. The law is well settled that if all the government agents or their agents do is to take advantage of the defendant's predisposition and willingness it does not amount to entrapment. Bloch v. United States, 9 Cir., 226 F.2d 185, certiorari denied 350 U.S. 948, 76 S.Ct. 323, 100 L.Ed. 826, and Sherman v. United States, 9 Cir., 241 F.2d 329, certiorari denied 354 U.S. 911, 77 S.Ct. 1299, 1 L.Ed.2d 1429.

■■ The last specification involves the refusal of the trial court to grant a postponement of the trial because of Stein's claimed ill health. This is a mat-

1. The government offered no evidence showing that Stein ever had the heroin in his own hands. It offered evidence of Browning, another previously convicted narcotics peddler, that on the third of three visits he made to Stein on March 24, Stein, (who, Browning said, had already been paid on the second visit to Stein) to a place on Ilona Street, where the heroin lay in a package wrapped in foil in or near the gutter, and pointed it out to him. Stein did not physically deliver the package. (This "delivery" without touching was confirmed by agent Feldman.) This "head in sand" form of "drop" or sale seems to be a common recent method of handling narcotics transactions. It reminds this court of the sequence often found in the Mann Act cases when the defendants have attempted to insulate themselves by having the transported women walk (or ride in a separate car) across the border. See Bennett v. United States, 9 Cir., 234 F.2d 675.

2. Stein was not arrested for some months after March 24, 1957, and the grand jury indictment was not returned until January 22, 1958. Apparently the occasion of the conference of Stein and Feldman was after Stein had been arrested and admitted to bail, but before indictment.

ter in the sound discretion of the trial court and the record here would not permit this court to say the discretion was abused.

Judgment affirmed.